UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| The Whiting-Turner Contracting Company, | Case No. 2:25-cv-00111-ART-DJA |
| Plaintiff, | |
| v. | ORDER ON THIRD-PARTY DEFENDANT'S MOTION TO DISMISS (ECF NO. 21) |
| Mollerup Glass Company; Employers Mutual Casualty Company, et al., | |
| Defendants. | |
| Mollerup Glass Company, | |
| Third-Party Plaintiff, | |
| v. | |
| Northwestern Industries-Arizona, Inc., | |
| Third-Party Defendant. | |

The Third-Party Complaint at issue in this order arises out of a subcontract for glass installation at a high-rise commercial office structure. (ECF No. 11.) Third-Party Plaintiff Mollerup Glass Company alleges several claims arising out of its agreements with Third-Party Defendant Northwestern Industries-Arizona, Inc., premised on allegations of providing defective insulated glass units. Before the Court is Third-Party Defendant's Motion to Dismiss the Third-Party Complaint. (ECF No. 21.)

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Whiting Turner Contracting Company ("Plaintiff") serves as a construction manager on a high-rise commercial office structure ("Subject Property") owned by Howard Hughes Corporation, Inc or its affiliated entities. (ECF No. 1-1 at 5.) Plaintiff contracted with subcontractor Mollerup Glass Company ("Mollerup") for glass and glazing, including the installation of insulated

glass units ("IGUs") at the Subject Property for $5,831,700. (*Id.*)

As part of its work on the Subject Property, Mollerup solicited and purchased, and Northwestern Industries-Arizona, Inc. ("NWI") manufactured and provided, the IGUs for installation. (ECF No. 11 at 19.) Mollerup provided NWI with project specifications and project-specific American Society for Testing and Materials requirements. (*Id.* at 20.) NWI allegedly indicated its compliance with the plans and specifications in the form of Submittals, which Mollerup provided to Plaintiff. (*Id.*)

Prior to placing its order, Mollerup completed and signed NWI's Credit Application, which included its Standard Terms and Conditions (the "Agreement"). (ECF No. 21-1.) When Mollerup placed its orders for the IGUs, it received Order Confirmations which said that "all sales are governed by [NWI's] STANDARD TERMS AND CONDITIONS, which are incorporated herein." (ECF No. 21-1 at 10-11) (emphasis in original). The purchase was also covered by NWI's Ten Year (10) Standard Limited Warranty Insulating Glass Unit (Dual Seal Unit) (the "Limited Warranty"). (ECF No. 21-1 at Ex. C.)

The IGUs appeared to be in conformance to the plans and specifications confirmed by the Submittals, the Agreement, and the Limited Warranty. (ECF No. 11 at 20.) The last IGUs were installed on or about May 2022. (ECF No. 1-1 at 6.) On or about August 15, 2022, Plaintiff advised Mollerup of periodic IGU breakages. (*Id.*) Mollerup then notified NWI of the breakages and demanded it honor its warranties. (ECF No. 11 at 21.) NWI allegedly refused or ignored all such requests. (*Id.*) Mollerup provided and installed select replacement IGUs at the Subject Property as requested by the Plaintiff. (*Id.*)

Mollerup alleges that the breakages to that point constituted a small fraction of the total number of IGUs installed. (*Id.*) Around February 22, 2023, Plaintiff provided a notice of default to Mollerup and demanded that Mollerup replace every IGU at the Subject Property (the "Total Replacement"). (*Id*; ECF No.

1-1 at 6.) Mollerup refused to undertake the Total Replacement, and subsequently Plaintiff removed and replaced all the IGUs at the Subject Property at its own expense, at an estimated $6,000,000. (ECF No. 1-1 at 7.)

On January 17, 2025, Plaintiff sued Mollerup for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, express indemnity, equitable indemnity, implied indemnity, unjust enrichment, negligence, and declaratory relief. (ECF No 1-1.) On February 25, 2025, Mollerup brought its Third-Party Complaint ("TPC") against NWI, alleging that in the event that Plaintiff's claims involve defects and damages relating to the true Subject Property, damages were caused by NWI as a result of its defective performance under their Agreement. (ECF No. 11 at 21.)

NWI filed the Motion to Dismiss Mollerup's TPC on May 9, 2025, and attached copies of the Agreement and Limited Warranty (ECF Nos. 21 and 21-1.) Mollerup responded (ECF No. 31) and NWI replied (ECF No. 32).

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-

pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

### III.   ANALYSIS

NWI moves to dismiss the TPC on the plain language of the contract, arguing it excludes liability for glass breakage, does not provide for indemnity to the Mollerup, and narrowly limits the scope of available damages. Mollerup argues that the terms of the contract are either ambiguous or provide for remedies that should be construed in its favor.

#### a. Analyzing the Claims Using Material Not Alleged in the Complaint

Mollerup objects to NWI's use of extrinsic evidence in its Motion to Dismiss, because courts generally do not look beyond the pleadings in ruling on a Rule 12(b)(6) motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). It claims that if the Court considers this additional material, it will convert the Motion to Dismiss into one for summary judgment. *See id.* at 907. The "incorporation by reference" doctrine offers an exception to this rule in situations in which "the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The contract between Mollerup and NWI forms the basis of Mollerup's claims. Mollerup's claim for express indemnity alleges that NWI "entered into one or more written agreements" with Mollerup (ECF No. 11 at 22), its breach of contract claim relies on the "terms of said agreements" (*Id.*), and its breach of express warranty that "written agreements . . . provide . . . the guarantee and warranty of said products" (*Id.* at 24). The resolution of those claims turns on the language of the agreements that are provided by Defendant in its Motion to

4

Dismiss. *See Clifford v. Geico Casualty Co.,* 428 F. Supp. 3d 317, 322 (D. Nev. 2019). Mollerup does not dispute the authenticity of the documents that Defendant cites in its brief and goes on to quote the language of their agreement in support of its claims. (ECF No. 31 at 12.) Therefore, the Court can properly consider these materials without converting the Motion to Dismiss into one for summary judgment.

### b. Breach of Contract

In its TPC, Mollerup identifies two possible breaches: first, NWI failed to insure and indemnify Mollerup, and second, that it failed to provided its products and materials and performing its work in a good and workmanlike manner. (ECF No. 11 at 23.) Defendant alleges that Mollerup fails to state a claim for breach of contract because the contract does not include any insurance or indemnification provisions, does not warrant against defect resulting in glass breakage, and strictly limits liability and damages. (ECF No. 32 at 9-10.)

Under Nevada law, to show a breach of contract a plaintiff must show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Keife v. Metro. Life Ins. Co.,* 797 F. Supp. 2d 1072 (D. Nev. 2011) (citing *Saini v. Int'l Game Tech.,* 434 F.Supp.2d 913, 919-920 (D. Nev. 2006). Neither party disputes the existence of a valid contract, or the validity of Exhibit A as accurately representing an agreement between the parties. (ECF No. 21-1.)

### i. Breach

To determine a breach, the Court looks to whether a party "fail[ed] to perform [its] obligations within the express terms of an agreement." *Creative Surfaces, Inc. v. Swonger*, 2:17-cv-2494-JCM-VCF, 2018 WL 4279225 at *3 (D. Nev. Jun. 19, 2018) (citing *Saini v. Int'l Game Tech.,* 434 F. Supp. 2d 913, 923 (D. Nev. 2006)). "A party cannot breach an obligation that was not in the contract." *Id.* When a contract is ambiguous, courts construe ambiguities against

the drafter. *Dickenson v. State, Dept. of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994). A contract is ambiguous where it is "reasonably susceptible to more than one interpretation." *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1086, 1094 (D. Nev. 2014) (citing *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003)). "An interpretation which results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract." *Id.* "An interpretation is not reasonable if it makes any contract provisions meaningless, or if it leads to an absurd result." *Nevada State Ed. Ass'n v. Clark Cnty. Ed. Ass'n*, 482 P.3d 665, 673 (Nev. 2021) (citing *Washoe Cty. Sch. Dist. v. White*, 396 P.3d 834, 839 (2017)).

### a. Indemnity and Insurance

NWI argues that it has no duty under the terms of the contract to defend or indemnify Mollerup for the cost of replacing the IGU's. Mollerup does not cite the portion of the contract that states that NWI owes a duty to maintain liability insurance, indemnify, or defend Mollerup.

NWI argues that all obligations between the parties are defined by the contract, as established by section 19. (ECF No. 21-1 at 8.) Section 13 of the Agreement requires Mollerup to indemnify, defend, and hold harmless the NWI for any claims related to its products. (ECF No. 21-1 at 8) (Mollerup "shall indemnify, defend, and hold NWI-AZ . . . against and hold them harmless from any and all claims, actions, suits, procedures, costs, expenses, damages, losses and liabilities, including any actual attorney's fees and costs arising out of, connected with, or resulting from any of NWI-AZ's products following their shipment . . .")

The Court agrees with NWI that the Agreement does not require it to maintain liability insurance for, indemnify, nor defendant Mollerup. Accordingly, Mollerup fails to state a breach of contract claim on that basis.

**b. Warranty**

Mollerup also alleges that NWI breached its warranty against defects by supplying defective IGUs. (*Id.* at 21.) It incorporates the allegations from the original Complaint that claim the subcontract was breached "by supplying or installing defective IGUs." (ECF No. 31 at 10, citing ECF No. 1-1 at 34.) The alleged warranty is premised on the Section 10 of the Agreement and the Limited Warranty. The Agreement states that "products sold by NWI-AZ are warranted to be free from manufacturing defects for one (1) year from date of shipment to Buyer." (ECF No. 21-1 at 7.) The Limited Warranty states that NWI "warrants for a period of TEN (10) years from date of manufacture and under normal condition, the insulated glass shall be free of material and workmanship defects." (ECF No. 21-1 at 13.)

The parties dispute, however, whether the contents of the Agreement and the Limited Warranty disclaim warranties against glass breakage, and to what extent. Section 10, clauses (b) and (e) of the Terms and Conditions purport to disclaim warranties for failure of the product due to glass breakage or glass breakage of any kind:

> WARRANTY. THERE ARE NO EXPRESS WARRANTIES EXCEPT AS SET FORTH IN THESE TERMS AND CONDITIONS AND NWI-AZ EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES, WITH REGARDS TO PRODUCTS SOLD BY NWI-AZ, WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Unless otherwise limited or extended by NWI-AZ in writing, products sold by NWI-AZ are warranted to be free from manufacturing defects for one (1) year from date of shipment to Buyer. The sole obligation of NWI-AZ under this warranty is to repair, or at its option, replace, defectively manufactured product(s) without charge to Buyer within the warranty period. No other remedies are available. NO WARRANTY IS MADE BY NWI-AZ WITH RESPECT TO: (a) Defectively manufactured product(s), notice of which is not provided within the applicable warranty period; (b) Failure of the product(s) due to . . . glass

7

breakage, . . . or any reason not related to defects in material or workmanship of the relevant product(s); . . . (e) Glass breakage of any kind. (capitalization in original) (ECF No. 21-1 at 8.) The Limited Warranty, which warrants against defects, also states: "NWI-AZ will have no liability under this Warranty, if any of the following events have occurred: Glass breakage, product failure due to improper usage . . ." (ECF No. 21-1- at 13.)

NWI argues that it is not liable for glass breakage, even due to defect. Specifically, NWI argues that clauses (b) and (e) of section 10 disclaiming warranties for "failure of the product[s] due to . . . glass breakage" and "[g]lass breakage of any kind" respectively should be interpreted to mean that regardless of manufacturing defect, it cannot be held liable if glass breaks. (ECF No. 32 at 9-10.) It also claims that the clause exempting it from liability for "[g]lass breakage, product failure due to improper usage . . ." should be read as two separate clauses, indicating that it will not be liable for *any* glass breakage. (*Id.*)

Mollerup argues that the glass breakage exclusions do not apply to defects, relying on conditional language in section 10(b) and the Limited Warranty that affects the definition of "glass breakage." Section 10(b) concludes with the phrase, "or any reason not related to defects in material or workmanship of the relevant products." (ECF No. 31 at 12.) This suggests that glass breakage due to defect is warranted. This interpretation is reinforced by the Limited Warranty, which also applies to defective IGU's but disclaims liability for "Glass breakage, product failure due to improper usage." (*Id.*) While Third Party Defendant argues this phrase could be interpreted to exclude all glass breakage, Third Party Plaintiff plausibly alleges that these provisions support an interpretation that the warranty applies to defects, including "glass breakage," but does not apply to glass breakage due to other causes, including improper handling, installation, loading, etc.

The Court finds that Mollerup at a minimum has plausibly alleged that there is an ambiguity as to what kind of glass breakage the warranty disclaimer addresses, such that Defendant might have breached the contract. There is more than one reasonable interpretation of the contractual warranties provided in the Agreement and Limited Warranty.

### ii. Damages

NWI argues that Mollerup's alleged damages are not recoverable under the terms of their agreement, pointing to a sectionof the Agreement titled "LIMITATIONS ON NWI-AZ's LIABILITY." (ECF No. 21 at 13) (capitalization in original). Third-Party Plaintiff maintains that it states a claim because the Agreement does not preclude or is ambiguous as to the limitations on NWI's liability for damages.

"Damages for a breach of contract claim are limited to those specifically outlined in the contract, if any, and those expectation damages sufficient to put the non-breaching party in the position it would have been had the breach not occurred." *Shaw v. CitiMortgage, Inc.*, 201 F.Supp.3d 1222, 1249 (D. Nev. 2016). Mollerup seeks actual damages for the IGUs it replaced, attorney's fees, and the potential damages that may result from the original Complaint. (ECF No. 31 at 16-17.) It points to a choice of remedies in the Agreement that allow for "the reasonable cost of repairing and replacing the defective products." (*Id.* at 17-18.) NWI argues that none of Mollerup's proposed damages are recoverable under the Agreements, since its actual and potential liability was incurred by "removing and reinstalling" IGUs. (ECF No. 21 at 13.) The Agreement disclaims liability for "the cost of removing and reinstalling" as well as disclaiming "indirect, consequential, special, economic, incidental, or punitive damages." (*Id.*) Therefore, NWI argues, there is no viable path to the damages that Mollerup claims in the TPC.

The Agreement acknowledges that NWI may incur liability for "repairing or replacing" but not "removing or reinstalling" defective IGUs. Section 10 (titled

"WARRANTY") of the Terms and Conditions in the Agreement concludes, "[a]ny liability of NWI-AZ to Buyer . . . shall be limited to NWI-AZ's choice of any one of the following: (a) the repair of the defective products by NWI-AZ; (b) the delivery of non-defective and conforming product to BUYER or to BUYER's customer; (c) the payment by NWI-AZ to Buyer of the reasonable cost of repairing or replacing the defective products, but not the cost of removing or reinstalling the products; or (c) [sic] the cancellation of the contract, Buyer's return of the products in question to NWI-AZ, and NWI-AZ's refund of the purchase price to buyer."

Similarly, section 11 of the Terms and Conditions in the Agreement disclaims liability for the cost of removing or reinstalling defective or nonconforming products, while limiting other forms of damages:

> LIMITATIONS ON NWI-AZ'S LIABILITY. NWI-AZ shall not, under any circumstances, even if advised of the possibility of such damages, be liable to BUYER or BUYER's customer for indirect, consequential, special, economic, incidental, or punitive damages whether the damages were foreseeable or arise out of tort, strict liability, products liability, or any other legal theory, except as precluded by law. Without limiting the generality of the preceding, NWI-AZ'S [sic] shall not be liable for: loss of or damage to other property, lost profits or revenue, damage to reputation, the labor and material cost of removing or reinstalling defective or nonconforming products, or damages caused by delays, back-charges, or loss of use.

(ECF No. 21-1 at 8.) This limitation does not extend to "repairing or replacing." Then, the Limited Warranty states that NWI warrants for a period of ten years "the insulated glass units shall be free from material and workmanship defects" and that it will incur liability for "replacing [defective] insulated glass unit[s] without charge F.O.B. nearest shipping point of NWI-AZ to place of original delivery, or in the alternative, a refund of 100% of NWI-AZ original selling price for such insulated glass product." (*Id.* at 13.)

Mollerup alleged damages already incurred replacing defective IGUs and potential liability for the Total Replacement of IGUs that WTCC is litigating in the

10

original Complaint. (ECF No. 11 at 20-21.) Because the Agreement acknowledges that NWI can be liable for "replacing" defective glass units, Mollerup has stated a cognizable claim for damages.

### iii. Causation

Having established that their Agreement does not unambiguously disclaim warranties against all glass breakage nor completely limit Mollerup's remedies, the Court turns to the element of causation. Mollerup alleges that despite timely and repeated notice to NWI of the breakages and presumed defects in the glass, as per requested in the Agreement, NWI did not respond or provide any of the remedies it said it could elect as an option as described in its warranties. (ECF No. 11 at 21.) NWI does not contest that it did not respond to Mollerup's requests. As a result of its failure to provide replacement IGUs, Mollerup incurred the cost of replacing select IGUs, and now faces the original lawsuit at issue. Therefore, Mollerup has sufficiently stated a breach of contract at this stage.

### a. Breach of Express Warranty

Mollerup's allegations under breach of express warranty are the same as its arguments under breach of contract. To bring a breach of express warranty claim under Nevada law, a plaintiff must demonstrate "(1) a warranty existed; (2) defendant breached the warranty; and (3) the breach was the proximate cause of the loss sustained by the plaintiff." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F.Supp.3d 1180, 1191 (D. Nev. 2023) (citing *Nevada Contract Servs., Inc. v. Squirrel Cos. Inc.*, 68 P.3d 896, 899 (Nev. 2003)). "Courts in Nevada have held that general contract-interpretation principles govern the interpretation of express warranties, and unambiguous contracts must be construed according to their plain language." *RSO Corporation v. Navistar, Inc.*, 796 F.Supp.3d 678, 681 (D. Nev. 2025) (internal citation omitted). "Exclusions of warranties are generally disfavored, and standardized take it or leave it form contracts . . . are construed

against the drafter." *Sierra Diesel Injection Service, Inc. v. Burroughs Corp., Inc.*, 890 F.2d 108, 114 (9th Cir. 1989) (construing Nevada law).

Mollerup's breach of express warranty claim is based on the same allegations as its breach of contract claim. Mollerup identifies an express warranty that the IGUs would be "free from manufacturing defects" and "free from of material and workmanship defects" (ECF No. 21-1 at 7, 13.) It alleges that the IGUs shattered because they were defective, a breach of the warranty. (ECF No. 11 at 21.) And it alleges that as a result of the IGUs shattering, it was required to replace and reinstall new IGUs at its own cost. (*Id.*) Having previously identified that the Agreement and Limited Warranty pose ambiguities that should be construed in favor of the non-drafting party, the Court finds that Mollerup has stated a claim for breach of express warranty.

### b. Breach of Implied Covenant of Good Faith and Fair Dealing

NWI argues that Mollerup's claim for breach of the implied covenant of good faith and fair dealing inherently relies on the same conduct as its breach of contract claim, the provision of allegedly defective IGUs, and therefore fails under Nevada law. Mollerup counters that it can plead for breach of the implied covenant in the alternative.

In Nevada, every contract implies the covenant of good faith and fair dealing. *Virgin Valley Water District v. Paradise Canyon, LLC*, 567 P.3d 962, 972 (Nev. 2025). A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes [sic] the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose

of the contract; and (4) plaintiff's justified expectations were denied." *Arminas Wagner Enterprises, Inc. v. Ohio Sec. Ins. Co.*, 658 F. Supp. 3d 883, 892 (D. Nev. 2023) (citing *Hilton Hotels Corp.*, 808 P.2d at 922). Whether a party acted in good faith is a question of fact. *Mitchell v. Bailey and Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020) (internal citation omitted).

In the TPC, Mollerup alleges that if the IGUs are considered defectively designed, developed, and/or constructed, then NWI breached the implied covenant. (ECF No. 11 at 29.) This allegation constitutes the same facts behind its claims for breach of contract and breach of express warranty. In its opposition, Mollerup clarifies that to the extent that NWI has "technically complied with the contract by refusing to warrant breakages," it contravened the intention and spirit of the contract because it simultaneously provided an express warranty against defective products. (ECF No. 31 at 20.) This is a dispute about the interpretation of a contractual term, not the bad faith performance of NWI. Therefore, Mollerup's claim for breach of the implied covenant of good faith and fair dealing is dismissed without prejudice and with leave to amend.

### c. Implied Warranties

NWI also argues that Mollerup's claim for implied warranty is directly contradicted by unambiguous terms of the agreement, therefore rendering its claim for implied warranty unsuccessful. (ECF No. 21 at 16.) Mollerup argues that Nevada recognizes implied warranties on the sale of goods that includes that the product is fit for ordinary purpose of which such goods are used. (ECF No. 31 at 19.)

Nevada law allows a seller to limit or exclude implied warranties of merchantability so long as the writing is conspicuous. NRS 104.2316(2). NWI

13

explicitly excluded the implied warranty of merchantability in the Terms, writing, in all caps, "NWI-AZ expressly disclaims all other warranties, with regards to products sold by NWI-AZ, whether express, implied, or statutory, including any warranty of merchantability or fitness for a particular purpose." (ECF No. 21-1 at 7.) This is conspicuous and unambiguous, and Mollerup makes no argument addressing the plain text. Therefore, Mollerup's claim under the breach of the implied warranty of merchantability or fitness for a particular purpose is dismissed.

### d. Negligence

In its Complaint, Mollerup argues that NWI negligently manufactured the IGUs and was damaged in the form of exposure to potential liability as well as costs, expenses, and attorney's fees incurred in the preparation and presentation of its defense of the WTCC lawsuit. (ECF No. 11 at 28-29.) Mollerup argues that because WTCC also mentioned health and safety issues for tenants that risked personal injury, the damages are not purely based on economic loss. (ECF No. 31 at 23.) NWI argues that the economic loss doctrine bars this claim, because WTCC's requested damages are related to the removal, repair, and replacement of IGUs in connection with the Total Replacement, as well as other economic losses, such as attorneys' fees and costs, investigative costs, and prejudgment interest. (ECF No. 21 at 18-19.) The mentions of personal injury in the WTCC only refers to "potential" for injury or "potentially dangerous" conditions. (ECF No. 32 at 14.)

To state a claim for negligence, a plaintiff must allege: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). While the tort of negligence can be committed by parties to a contract, the alleged breach must be of a duty imposed by law independent of any contractual duty. *Contreras v. Am. Fam. Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1220 (D. Nev. 2015).

14

In Nevada, the economic loss doctrine also bars unintentional tort claims when a plaintiff seeks to recover purely economic losses. *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F.Supp.2d 1279, 1283 (D. Nev. 2013) (internal citation omitted). "Purely economic loss has been defined as the loss of the benefit of the user's bargain ... including ... pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Id.* (internal citation omitted).

Whether in its TPC or Plaintiff's original Complaint, Mollerup does not cite to an actual personal injury to individuals at the property nor property damage beyond the allegedly defective product. There is no "imminent-threat-of-harm theory" that qualifies for an exception to the economic loss doctrine under Nevada law. *Nevada Power Company v. Trench France, S.A.S.*, No. 2:19-cv-01252-JAD-VAF, 2020 WL 6689340 at *3 (D. Nev. Nov. 12, 2020) (holding that "[e]xpanding tort recovery to include economic losses based on a foreseeable risk of harm . . . would essentially nullify the economic loss doctrine entirely . . ."). Additionally, the Court agrees with NWI that WTCC's allegation that the IGUs "creat[ed] property damage" is insufficiently pled. *See Nevada Power Co. v. Trench France S.A.S.*, No. 2:15-cv-264-JCM-NJK, 2016 WL 309337 at *2 (D. Nev. Jun. 1, 2016) (vague description of "substantial damage" insufficient to put the opposing party on notice of claim for negligence).

Therefore, Mollerup's negligence claim is barred by the economic loss doctrine and is dismissed.

### e. Express Indemnity

NWI argues there is no contractual provision under which Mollerup could base a claim for express indemnity, because the only indemnification agreement says that Mollerup will indemnify NWI. (ECF No. 21-1 at 8.) Mollerup does not dispute this conclusion in its response. (ECF No. 31 at 20.) "[C]ontractual

15

indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work." *United Rentals Hwy. Techs. v. Wells Cargo*, 289 P.3d 221, 226 (Nev. 2012). Indemnification agreements are "strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal language." *Casun Invest, A.G. v. Ponder*, No. 2:16-cv-2925, 2020 WL 59812 at *4 (D. Nev Jan. 6, 2020) (citing *George L. Brown Ins. v. Star Ins. Co.*, 237 P.3d 92, 96 (Nev. 2010)). Because there is no contractual provision granting indemnity to Mollerup within the express indemnity provision of the Agreement, its claim for express indemnity is dismissed.

### f. Equitable Indemnity

The Supreme Court of Nevada has held that "implied indemnity theories are not viable in the face of express indemnity agreements." *FDIC v. Nev. Title. Co.*, 2014 WL 4798523 at *4 (D. Nev. Sept. 25, 2014) (citing *Calloway v. City of Reno*, 939 P.2d 1020, 1029 (Nev. 1997) *opinion withdrawn on grant of reh'g*, 971 P.2d 1250 (1998); *see also Wells Cargo*, 289 P.3d at 226 ("When the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; rather it is enforced in accordance with the terms of the contracting parties' agreement.") (internal quotes omitted). To plead implied indemnity, Mollerup must allege that "(1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability was also liable to the third party; (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter." *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009).

Because the Agreement contains an express indemnity provision that benefits only NWI, Mollerup's theory of implied indemnity is not available. Therefore, Mollerup's claim is dismissed.

### g. Contribution and Apportionment

Mollerup argues that it is not responsible for the damages or defects alleged by WTCC in the original Complaint, and any liability found on its end is due to the negligence or fault of NWI. (ECF No. 11 at 27.) Therefore, Mollerup argues that it would be entitled to contribution over and against NWI for all such amounts that the trier of fact may determine were the result of acts or omissions of NWI, as well as costs, expenses, and attorney's fees. (*Id.*) Mollerup similarly argues that if WTCC should recover judgment against it, then it will be entitled to apportionment against NWI for its negligence and fault. (ECF No. 11 at 28.)

Contribution and apportionment are both causes of action that sound in tort, not contract. N.R.S. § 17.225 ("The right of contribution exists only in favor of a tortfeasor who has paid more than his or her equitable share of the common liability"); *see Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1154 n.4 (Nev. 2013) (finding that contribution and apportionment were not available where defendant was not found to be a joint tortfeasor). Having dismissed Mollerup's negligence claim under the economic loss doctrine, it has no surviving claims of tort under which Mollerup and NWI could share liability requiring contribution and apportionment. Therefore, Mollerup's claims for contribution and apportionment are dismissed.

### h. Declaratory Relief

To plead a claim for declaratory relief, Mollerup must allege "(1) a justiciable controversy exists between persons with adverse interests, (2) the party seeking declaratory relief has a legally protectable interest in the controversy, and (3) the issue is ripe for judicial determination." *Cnty. of Clark, ex rel. Univ. Med. Ctr. V. Upchurch,* 961 P.2d 754, 757 (Nev. 1998).

Mollerup requests declaratory relief that NWI owes Mollerup a duty to defend and a duty to name Mollerup as an additional insured. As stated in the analysis of breach of contract, NWI does not owe Mollerup this duty. Mollerup

also requests declaratory relief that NWI owes Mollerup a duty to indemnify. As stated in the analysis of express and implied indemnity, the Court follows the express terms of the contract, which only indemnifies NWI in the case of loss.

Therefore, Mollerup's claims for declaratory relief are dismissed.

**IV.    Conclusion**

It is therefore ordered the Court GRANTS IN PART NWI's Motion to Dismiss (ECF No. 21) as to Mollerup's claims for breach of implied covenant of good faith and fair dealing, breach of implied warranty, express and implied indemnity, negligence, contribution, apportionment, and declaratory relief without prejudice and with leave to amend.

It is further ordered that the Court DENIES NWI's Motion to Dismiss (ECF No. 21) as to Mollerup's claims for breach of contract and breach of express warranty.

DATED THIS 23rd day of January, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE